UNITED STATES *v.* MASSON (No. 1280).[1]

SAFETY MATCHES AND WIND MATCHES.

The matches of the importation called "Wind Flamers" come within the definition of "fancy" matches as fixed by this court. United Cigar Stores Co. *et al. v.* United States (4 Ct. Cust. Appls., 66; T. D. 33311). The friction safety matches of the importation are not "fancy" matches.

United States Court of Customs Appeals, January 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33553 (T. D. 33738).

[Modified.]

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* special attorney, on the brief), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The invoices affected by this appeal cover a variety of matches. The different classes are indicated and distinguished by case num-

---

bers and other data upon the invoices.   The bulk of the importation was passed as entered, and the protest and this appeal concern so-called "Flamers" or "wind matches" and some of the so-called "safety matches," all of which were classified as "fancy matches" and rated for duty at 35 per centum ad valorem by the collector of customs at the port of Philadelphia under the provisions of paragraph 436 of the tariff act of 1909, which provides:

436. Matches, friction or lucifer, of all descriptions, per gross of one hundred and forty-four boxes, containing not more than one hundred matches per box, six cents per gross; when imported otherwise than in boxes containing not more than one hundred matches each, three-fourths of one cent per one thousand matches; wax and fancy matches and tapers, thirty-five per centum ad valorem.

The importer made claim that these articles were properly dutiable at 6 cents per gross of 144 boxes containing not more than 100 matches per box under the same paragraph.   The Board of General Appraisers sustained the importer and the Government appeals. The collector made return as to the subject matter of the appeal that the matches consisted of "certain matches, with colored sticks, and wind-matches * * *."   The decision of the Board of General Appraisers is brief and recites: "The appraiser's special report on these protests states that the merchandise in question consists of 'fancy matches' * * *."   The board then cites the decision of this court in United Cigar Stores Co. *et al. v.* United States (4 Ct. Cust. A ls, 66; T. D. 33311), stating that therein "it was held that such matches were dutiable at the rate of 6 cents per gross boxes under the provisions of paragraph 436 and in harmony there-with that claim is sustained."

Obviously the decision of this court in United Cigar Stores Co. *et al. v.* United States, *supra*, was inaccurately interpreted.   The matches the subject of that decision as defined therein were as follows:

The importation consists of matches made of thin flat sticks tipped with some ignitible composition colored yellow.   The wood from which these matches are made is first cut into flakes about 2 inches long, an inch wide, and one-sixteenth of an inch thick.   Each flake is stained red and cut into 12 pointed splints joined together at the bottom by a common wooden base from which they have not been completely severed.   After tipping the splints the flakes are made up in pairs and pasted to a paper folder or wrapper in such a way that they may be conveniently carried in the vest pocket and the splints readily broken off one at a time as required.   The folder or wrapper is provided with the specially prepared striking surface required for the ignition of the safety match, and is so designed that it serves the double purpose of protecting the matches from injury and of advertising various kinds of goods.

The court laid down a rule therein, it being claimed by the Government that that importation was of fancy matches, for the determination of what is and what is not a fancy match, as follows:

In common parlance a fancy article is one which is out of the ordinary, that is to say, one which has some special quality, virtue, or value not found in the article commonly used and not required by the use to which the ordinary article is commonly put; or it may be something which pleases not so much because of the qualities which make it useful as because of characteristics which appeal to the taste and to the fancy. "Fancy" is the antonym of "plain," "common," "ordinary," "staple," and to say that a thing is fancy necessarily implies that it has a value or characteristics not found

in the articles of similar type. There is nothing esthetic or fanciful about the goods in controversy, and in them is no quality or virtue which is not found in the ordinary safety match in general use. They are flimsy safety matches and beyond the fact that they are small, ordinarily cost nothing to the consumer, lie flat in the package, and may be conveniently carried, there is nothing about them which would recommend them to the consumer. Far from having any special value, they are an inferior grade of match, which is not sold but given away to smokers and which is not worth half as much as a good lucifer match. The fact that the sticks or stems of the matches are stained and that they are presented to the consumer in booklets can not be regarded as giving a character to the goods which would justify their designation as fancy matches. Indeed, that principle was recognized by the board itself in the Sheldon case, when it held that better matches with stained sticks put up in boxes and better matches with plain sticks put up in booklets were not fancy matches. Stained or unstained the matches are sold to the dealer for the same price and their transformation into a fancy match can not be effected by putting them up in a booklet, which advertises many kinds of goods, rather than in a box, which advertises matches only. The manner of putting up the matches might possibly give them the character of a novelty, but certainly by itself it would not be sufficient to make out of them a fancy article.

The matches included upon these invoices as "Wind Flamers" are not of the classes included within the decision in question. They are, however, within the definition of fancy matches as therein expressed and defined by the court. The matches included upon these invoices, however, which are merely safety matches with colored sticks, "(11/12 sizes, red sticks, yellow tips)" are not within the definition of fancy matches as laid down by the court in that case. They are more like those the subject of decision in the case, and which as such were held properly dutiable as claimed by the importer in this case. The decision of the board as to this class of merchandise should be affirmed. The decision of the board as to the classes of merchandise designated upon the invoices as "Wind Flamers" should be reversed. Inasmuch as the goods can be segregated by an examination of the invoices the decision is therefore in the particulars stated *modified*.